In re Ben Asa **LAMBERT**, Karen Jordan Lambert, Debtors.

Delano **GEOGHAGAN**, Plaintiff,

v.

Benjamin Asa **LAMBERT**, Defendant.

Bankruptcy No. 84–01229.

Adv. No. 84–0123.

United States Bankruptcy Court, M.D. Alabama, E.D.

Jan. 2, 1986.

Order On Motion To Vacate Judgement and For Further Relief Feb. 12, 1986.

John E. Enslen, Wetumpka, Ala., for plaintiff.

Peter H. Martin, Opelika, Ala., for defendant/debtor.

Ed Hill, Opelika, Ala., Trustee.

## OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY

RODNEY R. STEELE, Bankruptcy Judge.

In this court's order of November 20, 1985, the pleadings were settled in this adversary proceeding, and provided for the trial on November 22, 1985. See this court's order filed November 20, 1985.

Count I of the complaint, adopted by reference from the state civil proceeding in Elmore County, Alabama, and numbered Case No. CV–83–438 in that state court, asserts that the debtor was guilty of fraud when, as an agent for plaintiff, Geoghagan and Globe Life and Accident Insurance Company, the debtor sold certain insurance policies as such agent when, in fact, he falsified applications for insurance by using fictitious persons who did not exist, by paying annual premiums with forged counter checks on nonexisting checking accounts with the Bank of Lineville, Alabama, and that he then turned in false applications with the forged checks to the plaintiff in exchange for a 40% commission up front on the amount of the first annual premium. It is asserted that Geoghagan, in reliance on this fraudulent conduct, did pay the 40% commission and other commissions to debtor, and that the debt remaining owing to Geoghagan by this debtor and growing out of that fraudulent misconduct ought not to be discharged in these proceedings.

The answer filed on April 22, 1985, by the defendant is a general denial of the material allegations of the complaint. On November 8, 1985, the debtor-defendant amended his answer, repeating the general denial, and pleading in addition, accord and satisfaction, release, waiver, unclean hands, estoppel and payment.

The matter came on for trial on November 22, 1985, and is now submitted for determination. The applicable law is Title 11 U.S.C. § 523(a)(2)(A).

## FINDINGS

In February and March of 1983, the debtor, who at that time was an agent working under Delano Geoghagan, this plaintiff, sold insurance in the territory assigned by Globe Insurance Company to Geoghagan. This consisted of the territories surrounding Montgomery, Alabama.

During February and March of that year, according to the uncontradicted testi-

mony of Melinda Hand, Rhonda Hand, Shirley Hefflin, and Jan Tanton, the debtor arranged for these persons to falsify applications for insurance, and to provide checks drawn on accounts which did not exist or which did not have sufficient funds in them. An example of this fraudulent tactic is found in the testimony of Melinda Hand, who testified that on February 3, 1983, at her father's house in the company of three of her friends, the debtor came and tried to sell her insurance, and asked her finally to sign a check when she had no checking account. He stated that he worked for Globe Insurance Company. He gave Melinda Hand two twenty dollar bills and a ten dollar bill for the check. He told her that he was "getting it on over the insurance company." He later returned to the Hand home, apparently to obtain additional fraudulent applications and checks, but was requested to leave.

In February of 1983, according to the testimony of Jan Tanton, the debtor sought to sell an insurance policy to her employer at Electrolux of Opelika, and in that connection, induced her to write a check and stop payment on it. He filled out papers which were apparently applications for insurance, and Jan Tanton signed a check, though she did not have money in the bank to cover the check at the time. She stopped payment on the check, and the debtor paid her $10 to cover the stop payment order. Ms. Tanton did not sign the application for insurance.

Moreover, a public record introduced into evidence at the time of this hearing is an Insurance Department order revoking license, issued by the Alabama State Department of Insurance. It applied to this debtor, and it grew out of the complaint made by this plaintiff to the Insurance Department concerning this debtor.

Mr. Hugh Easterwood, an investigator for the State Department of Insurance, State of Alabama, testified that two other applications for insurance turned in by this debtor to the plaintiff's agency, which applications were in the name of Frickett and Brown, were actually applications filled out for fictitious persons, and that he was unable to locate any such person in his investigation.

Geoghagan testified in these proceedings that he had paid Lambert based upon false applications 40% commissions, plus 10% overwrite commissions, prior to the discovery of the fraud, and that Lambert's debt to Geoghagan at this time is over $5,000.

There is evidence that this debtor paid $1,500 to Globe Life in an effort to reduce the amount of his debt owing to the Globe Agency operated by Geoghagan, but it is not shown that this amount was paid in satisfaction of the false or fictitious applications and checks which Geoghagan submitted. The testimony is that the $1,500 was paid in an effort to get reinstatement for this debtor with the Globe Agency operated to Geoghagan. But according to the testimony, the debtor continued to make false representations or applications to Geoghagan's agency, and was ultimately required to leave the employment of Geoghagan's Globe Agency. There was also some evidence that the moneys were extended to debtor by Geoghagan's Globe Agency before the false applications were filed and the forged checks were submitted. But there was also counterveiling evidence to the effect that the continued advance drawings after the fictitious submissions were made in reliance on those submissions.

## CONCLUSIONS

■ The conclusion must be that this debtor is guilty of fraudulent misconduct. There is no contradictory testimony concerning his submission of fictitious applications and forged checks.

The conduct fits exactly the definition found in *Collier on Bankruptcy*, 15th Edition, Paragraph 523.08[5] at Page 523–53:

Actual fraud by definition consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.

The closest case which we are able to find on point is *In re Morris,* (B.C.N.D., Ill., 1983), 31 B.R. 474. In that case, the sublicensee of a piano and organ concession in a Sears Roebuck store, who was obliged to submit his sales to the Sears financing department, falsified tickets and sales invoices, and obtained from Sears Roebuck funds on fictitious sale. The plaintiff in that case, the licensee from Sears, was obliged to make good the disbursements by Sears to the debtor, and that licensee held a nondischargeable debt against the debtor sublicensee when the sublicensee filed bankruptcy.

And since the debt owed by this debtor is infected with such fraudulently induced payments, then we conclude that the entire debt, whatever it may be, is nondischargeable. See *Birmingham Trust National Bank v. Case,* (11th Cir., 1985), 755 F.2d 1474.

We leave to the decision the Circuit Court of Elmore County in the case now pending before that court and involving this and other debts allegedly owed by debtor to Geoghagan, the determination of the amount of such nondischarged debt in these proceedings.

An appropriate order will enter.

## ORDER ON MOTION TO VACATE JUDGMENT AND FOR FURTHER RELIEF

On January 2, 1986, this court entered an order determining that a certain debt owed by the defendant to the plaintiff was nondischargeable in these proceedings, and remitting to the Circuit Court of Elmore County, Alabama the determination the amount of any debt based upon the fraudulent transaction or transactions asserted in the complaint in that Circuit Court.

On January 10, 1986, the defendant filed a motion to vacate that judgment and order, and to render judgment for the defendant, or in the alternative for a new trial, or in the alternative, to amend the judgment.

It is asserted in that motion that the court erred as to the certain findings of fact, that the court further erred in failing to make findings concerning defendant's affirmative defenses of accord and satisfaction, payment and release, and further that the court erred in failing to make findings concerning defendant's affirmative defenses of accord and satisfaction, payment and release, and further that the court erred in failing to find that some claims were time barred which were asserted to be fraudulent. Further, the motion asserts that the court erred in failing to set the damages in the case after having found that the debt was nondischargeable.

The motion was set to be heard on February 10, 1986, at Montgomery.

At that time and place, the court heard argument of counsel for the plaintiff and the defendant.

As to the findings asserted to be erroneous, and relating to the repayment of $1,500.00, asserted by the defendant to be in restitution or payment for fraudulently induced commission payments by plaintiff to defendant, the court has re-examined its findings and conclusions and portions of the testimony, including the testimony offered by deposition. The findings as are cited in the December 2 opinion and order are correct. Admittedly, there was a payment of $1,500.00, but it does not appear that it was made as restitution. It appears that it was made as a condition of re-employment by plaintiff of the defendant at the Globe Insurance Company Agency. It was a condition made by Mr. Narrell, who was a supervising agent in Birmingham for the Globe Company.

But the payment of this sum of money cannot take away the invidious nature of the transactions upon which the December 2 opinion and order are based. The court was satisfied at the time of the hearing, and is satisfied now that the defendant unquestionably was engaged in a scheme or device for cheating Geoghagan and the Globe Insurance Company by the filing of fictitious insurance applications, forged checks, and that this train of activity continued after the initial fictitious applications made in late February.

The defendant makes considerable argument concerning the introduction of testimony concerning other fraudulent activities of this debtor, namely, the filing of false or fraudulent applications for insurance applicants Taunton, Hann, King, Ruth Brown, and Feather.

This testimony, in the opinion of the court, could be introduced into evidence on a number of theories. However, the court reads the application to determine dischargeability, asserted in this adversary proceeding, to be a general allegation that the debtor was guilty of fraud and making false applications and the like, generally, and the single question before the court in that connection was whether the defendant/debtor did, in fact, knowingly and intentionally make false and fraudulent applications for the purpose of obtaining money or property from the plaintiff, Geoghagan. It is clear from the evidence that he did so.

 Nor is it incumbent upon the court to make findings concerning the defendant's affirmative defenses of accord and satisfaction, payment and release and the statute of limitations in this case. The sole question before the court here is whether or not the federal test under Section 523(a)(2) has been met by the plaintiff. That test requires the obtaining of money, property, services, or an extension, renewal or refinancing of credit by false pretenses, false representations or actual fraud. This means a showing of intentional or wilful activity known to be false or fraudulent by the debtor. We think the evidence fully supports this conclusion. If there are other defenses to a recovery under any other theory of law, then such defenses may be available in some forum in which the liability under other laws relating to fraud are available. Thus the liquidation of damages in the Elmore Circuit Court, if the tests under the state law for fraud is different, may be subject to those affirmative defenses of accord and satisfaction, payment and release, and the like, which the debtor insists upon in this proceeding.

The court treated in the opinion and order entered on December 2, the question of reliance. As to the court's erring in failing to set damages in this case, we conclude that it is not incumbent on the court in every instance to assess and set the amount of the debt which is determined to be nondischargeable. Where that question is already in issue, and the only matter before the court is the dischargeability of the debt, a matter exclusively within the jurisdiction of this court, then it is appropriate to leave the liquidation of damages to another court.

It is therefore ORDERED that the motion to vacate judgment and to render judgment, filed by the defendant in this case is hereby denied.